1
2
3
4

Gregory Stoltz (027519)
GStoltz Law, LLC
530 Main Street, Suite B
Tucson, Arizona 85701
(520) 428-4734
greg@gstoltzlaw.com

5
6

*Attorneys for Plaintiffs Robert Bennetti, Linda Mariano,
and Linki Peddy*

7
8

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF ARIZONA
TUCSON DIVISION

9
10
11

Robert Bennetti, Linda Mariano, and Linki Peddy,
individually and on behalf of a class of all other
persons similarly situated,

Case No.:

12

Plaintiffs,

**CLASS ACTION COMPLAINT
FOR VIOLATIONS OF ERISA**

13

v.

14
15
16

Mark G. Monson; David Johnson; Douglas
Zimmerman; Alberto J. Tarajano; and DOES 1-25,
Defendants.

17

and

18
19

Community Provider of Enrichment Services, Inc.
Employee Stock Ownership Plan and Trust,

20

Nominal Defendant

21

22
23
24

    Plaintiffs Robert Bennetti, Linda Mariano, and Linki Peddy, individually and on behalf

of all similarly situated participants[1] in the Community Provider of Enrichment Services, Inc.

25
26
27
28

---

[1] The Employee Income Retirement Act of 1974, as amended ("ERISA"), 29 U.S.C. §§ 1001, *et seq.*, defines "participants" to include "beneficiaries" "The term 'participant' means any employee or former employee of an employer or any member or former member of an employee organization, who is or may become eligible to receive a benefit of any type from an employee benefit plan which covers employees of such employer or members of such organization, *or whose beneficiaries may be eligible to receive any such benefit*." ERISA Section 3(7), 29 U.S.C. § 1002(7) (emphasis supplied). "The term 'beneficiary' means a person designated by (footnote continued)

CLASS ACTION COMPLAINT FOR
VIOLATIONS OF ERISA

Employee Stock Ownership Plan and Trust (the "CPES ESOP" or the "Plan") (collectively, "Plaintiffs"), bring this Class Action Complaint for Violations of ERISA against Defendants Mark G. Monson, David Johnson, Douglas Zimmerman, Alberto J. Tarajano, and DOES 1-25 (collectively, "Defendants"), alleging as follows:

**INTRODUCTION**

1.      This action arises out the bankruptcy proceeding in the United States District Court for the Central District of California in which Community Provider of Enrichment Services, Inc., now known as CPESAZ Liquidating, Inc. ("CPES-AZ"), an Arizona corporation headquartered in Tucson, Arizona, and its wholly-owned subsidiaries, Novelles Developmental Services, Inc., now known as NDS Liquidating, Inc. ("Novelles"), and CPES California, Inc., now known as CPESCA Liquidating, Inc. ("CPES-CA"), filed Voluntary Petitions for Non-Individuals Filing for Bankruptcy under Chapter 11 of the United States Bankruptcy Code, now styled *In re CPESAZ Liquidating, Inc., et al*., No. 9:20-bk-10554-DS (Jointly Administered with No. 9:20-bk-10553-DS and 9:20-bk-10994-DS) (Bankr. C.D. Cal.) (the "Bankruptcy Proceeding"). Plaintiffs bring this Class Action Complaint for Violations of ERISA ("Complaint") to remedy the violations of ERISA they discovered in and during the Bankruptcy Proceeding.

2.      CPES-AZ is the corporate sponsor of the Community Provider of Enrichment Services Employee Stock Ownership Plan and Trust (the "CPES ESOP" or "Plan") and the Plan Administrator of the CPES ESOP. Since 1994, CPES-AZ has been wholly owned by the CPEs ESOP. The CPES ESOP, by its ownership of CPES-AZ, wholly owned Novelles and CPES-CA.

3.      The CPES ESOP is the primary, if not the sole, retirement plan for the employees of CPES-AZ. Given the CPES ESOP's 100% ownership of CPES-AZ and the fact that CPES-

---

a participant, or by the terms of an employee benefit plan, who is or may become entitled to a benefit thereunder." ERISA Section 3(8), 29 U.S.C. § 1002(8). This Class Action Complaint for Violations of ERISA thus uses the term "participants" as including "beneficiaries".

CLASS ACTION COMPLAINT FOR
VIOLATIONS OF ERISA

AZ, Novelles, and CPES-CA are no longer operating companies, the assets of CPES-AZ, Novelles, and CPES-CA are the assets of the CPES ESOP.

**BACKGROUND**

4.    CPES-AZ, Novelles, and CPES-CA were community human services and healthcare organizations and a provider of person-centered, trauma-informed care. CPES-AZ, Novelles, and CPES-CA historically offered a comprehensive array of behavioral health services, including outpatient mental health services, an intensive outpatient therapy program, employee assistance program services, individual and group counseling, addiction recovery programs, child and family services, foster care, training and support for people with intellectual and developmental disabilities, and vocational services. Their employee counselors and clinicians had a variety of experience and specialization. They also integrated their counseling services with overall healthcare services, and one of their core competencies was working with people who experienced multiple and severe co-occurring disorders. They operated and staffed group homes in Arizona (CPES-AZ), in Northern California (Novelles), and in Southern California (CPES-CA), providing residences and services to developmentally disabled individuals, and also provided day treatment services and supportive living services. As of April 24, 2020, the date on which CPES-AZ and Novelles filed their Voluntary Petitions in bankruptcy, CPES-AZ and Novelles had approximately 962 employees. CPES-AZ had approximately 697 employees in Arizona, and Novelles had approximately 265 employees in California. CPES-CA had approximately 250 employees in California.

5.    Plaintiffs and the proposed Class are participants in the Community Provider of Enrichment Services Employee Stock Ownership Plan and Trust (the "CPES ESOP" or "Plan"). They are the employee-owners of CPES-AZ, Novelles, and CPES-CA.

6.    In 1994, CPES-AZ established the CPES ESOP as a retirement plan for the employees of CPES-AZ. Since then, the CPES ESOP has wholly owned CPES-AZ, and by its ownership of CPES-AZ, has wholly owned the CPES-AZ subsidiaries, Novelles and CPES-CA.

7.      On April 24, 2020, following the abrupt resignation of then CPES ESOP Trustee, Defendant Tarajano, and his replacement with a successor ESOP Trustee (Miguel Paredes), and without notice to or the consent of their individual employee owners, CPES-AZ and Novelles each filed a voluntary Chapter 11 bankruptcy petition in the U.S. District Court for the Central District of California, Northern Division (Santa Barbara, California) (Case Nos. 9:20-bk-10554-DS and 9:20-bk-10553-DS, respectively, and subsequently consolidated for joint administration under Case No. 9:20-bk-10554-DS).

8.      On August 11, 2020, without notice to or the consent of its individual employee owners, CPES-CA also filed a voluntary Chapter 11 bankruptcy petition in the U.S. District Court for the Central District of California, Northern Division (Santa Barbara, California) (Case No. 9:20-bk-15456-SY, subsequently consolidated for joint administration with the CPES-AZ and Novelles bankruptcies under Case No. 9:20-bk-10554-DS).

9.      The Bankruptcy Proceeding was initiated by the CPES Board of Directors with the purpose of liquidating all or substantially all of the assets of CPES-AZ, Novelles, and CPES-CA and dissolving those corporations. The entire pretense or pretext for the institution of the Bankruptcy Proceeding, however, was a sham and was based upon multiple substantial conflicts of interest, and to use the Bankruptcy Court to avoid the proscriptions of ERISA and Arizona state law, including to avoid seeking the consent of the CPES ESOP participants to such liquidation and dissolution through a necessary direction pass-through shareholder vote, and to avoid the personal liabilities of the Defendants. The Bankruptcy Proceeding needlessly wasted the assets of CPES-AZ, Novelles, and CPES-CA – and the fair market value of the retirement accounts of their employees, the CPES ESOP participants – by transferring the exorbitant and excessive costs of the Bankruptcy Proceeding to the residual bankruptcy estate, i.e., to the ESOP participants. The CPES residual bankruptcy estate is comprised of monies remaining in the CPES bankruptcy estate after the payment of the administrative claims and other claims, attorneys' fees, costs of the Liquidating Trustee and its attorneys, and any other "expenses" of the Bankruptcy Proceeding, and inures to the ESOP participants.

CLASS ACTION COMPLAINT FOR
VIOLATIONS OF ERISA

10.    When CPES-AZ and Novelles first filed the Bankruptcy Proceeding, CPES-AZ and Novelles had no real debt and their assets far outweighed any liabilities. According to the CPES-AZ Schedules of Financial Affairs ("SOFA"), CPES-AZ had slightly more than $2,900,000 in unsecured liabilities, approximately $2,400,000 of which was inter-company "debt" with CPES California. According to the SOFA, CPES-AZ described its assets as being in excess of $12,500,000. As such, no creditors committee was sought or appointed in the Bankruptcy Proceeding. Similarly, CPES-CA's assets vastly outweighed its liabilities at the time of its bankruptcy filing in 2020.

11.    Indeed, as premeditated, since the filing of the Bankruptcy Proceeding, the assets of CPES-AZ, Novelles and CPES-CA have been fully liquidated, and those entities are now liquidation entities (non-operating entities). Since then, the CPES bankruptcy estate has been depleted and has, since June 30, 2021, consistently been estimated by the Liquidating Trustee in the Bankruptcy Proceeding to be depleted from approximately $15,500,00 to $5,000,000. [CPES Bankruptcy Docket Nos. 1032, 1033, 1130, 1230, 1232, 1302, 1348, 1357.] Such amount likely will be considerably less than that amount when the CPES residual bankruptcy estate is actually distributed to the ESOP participants, and, if the statement of at least one member of the CPES Board of Directors is accurate, likely around $3,000,000.

12.    On or about September 30, 2020, all or substantially all of the assets of Novelles and CPES-CA were liquidated in the Bankruptcy Proceeding.

13.    On or about October 15, 2020, all or substantially all of the assets of CPES-AZ were liquidated in the Bankruptcy Proceeding.

14.    On May 10, 2021, over the objection of the individual named Plaintiffs here and 92 other CPES ESOP participants, the Bankruptcy Court approved the Debtors' (CPES-AZ's, Novelles's and CPES-CA's) proposed First Amended Joint Chapter 11 Plan of Liquidation, as Modified [CPES Bankruptcy Docket No. 802, the "CPES Plan of Liquidation"; CPES Bankruptcy Docket No. 836, the "Confirmation Order", dated May 10, 2021].

15.    The Plan of Liquidation became effective on or about June 17, 2021. [CPES Bankruptcy Docket Nos. 900 and 915.]

CLASS ACTION COMPLAINT FOR
VIOLATIONS OF ERISA

16.    At least as of the liquidation of the Debtors in bankruptcy, the Debtors ceased to be operating companies in the context of the U.S. Department of Labor's Plan Asset regulations, 29 CFR § 2510.3-101. "Generally, when a plan invests in another entity, the plan's assets include its investment, but do not, solely by reason of such investment, include any of the underlying assets of the entity. However, in the case of a plan's investment in an equity interest of an entity that is neither a publicly-offered security nor a security issued by an investment company registered under the Investment Company Act of 1940 its assets include both the equity interest and an undivided interest in each of the underlying assets of the entity, unless it is established that – (i) The entity is an operating company, or (ii) Equity participation in the entity by benefit plan investors is not significant. Therefore, any person who exercises authority or control respecting the management or disposition of such underlying assets, and any person who provides investment advice with respect to such assets for a fee (direct or indirect), is a fiduciary of the investing plan." 29 CFR § 2510.3-101(a)(2)

17.    As such, the assets of CPES-AZ, Novelles, and CPES-CA became the assets of the CPES ESOP.

18.    Under the Plan of Liquidation in the Bankruptcy Proceeding, a Liquidating Trustee (Oxford Restructuring Advisors, LLC) was appointed. [CPES Bankruptcy Docket Nos. 802 and 836.]

19.    Upon the effective date of the Plan of Liquidation, June 17, 2021, the Liquidating Trustee succeeded to CPES-AZ, Novelles, and CPES-CA, including in CPES-AZ's role as Plan Administrator of the CPES ESOP.

20.    Under the Plan of Liquidation, as of the confirmation date of the Plan of Liquidation, May 10, 2021, the CPES ESOP formally terminated. [CPES Bankruptcy Docket No. 802, at ¶ 5.7.] The CPES ESOP Employee Stock Ownership Trust was unaffected and continues. [*Id.*] Plaintiffs assert, however, that the filing of the Bankruptcy Proceeding constituted a termination or partial termination of the CPES ESOP [CPES ESOP Plan Document, at Section 19 (Future of the Plan) ("A complete discontinuance of Employer Contributions shall be deemed to be a termination of the Plan for this purpose.").]

CLASS ACTION COMPLAINT FOR
VIOLATIONS OF ERISA

21.    a.    This Class Action Complaint for Violation of ERISA arises out of information that Plaintiffs and 92 other CPES ESOP participants learned during the CPES Bankruptcy Proceeding, namely, that the valuation of CPES-AZ and the CPES ESOP's assets as of December 31, 2018, was improperly and intentionally inflated, contained mistakes, inappropriately changed valuation methodologies and instead used incorrect valuation methodologies, and was incorrect and that, as a result, distributions to certain CPES ESOP participants were made at improperly inflated values, to the detriment of the CPES ESOP.

b.    Defendant Monson testified to this under oath during the Bankruptcy Proceeding on May 28, 2020, at the 341(a) initial Meeting of Creditors therein.

c.    This factual information also was confirmed by the present trustee of the CPES ESOP (Miguel Paredes), who was not initially involved in the December 31, 2018, year-end valuation process and who was retained as "Successor" ESOP Trustee on or about April 16, 2020, eight days before the initial bankruptcy filings.

d.    The present CPES ESOP Trustee, however, has not provided Plaintiffs with any information with respect to his efforts, if any, to correct the improper December 31, 2018, year-end valuation, by seeking to bring the claims herein against the parties personally responsible for the ERISA violations, namely, the Defendants.

e.    Moreover, the Liquidating Trustee has not provided Plaintiffs with any information with respect to its efforts, if any, to correct the improper December 31, 2018, year-end valuation, by seeking to bring the claims herein against the parties personally responsible for the ERISA violations, namely, the Defendants.

22.    In addition, this action alleges that CPES-AZ, then the Plan Administrator of the CPES ESOP and the corporate sponsor of the CPES ESOP, acting though one or more of the Defendants, timely failed to provide proper disclosures required by ERISA. The ESOP Plan Administrator and other parties failed (i) to timely and properly determine in good faith the fair market value of the CPES ESOP plan sponsor since December 31, 2019, (ii) to have timely filed certain of the required IRS Forms 5500 (Annual Return/Report of Employee Benefit Plan ("Form 5500") with the U.S. Department of Labor (the "DOL") for the CPES ESOP, namely,

CLASS ACTION COMPLAINT FOR
VIOLATIONS OF ERISA

the 2020 Form 5500, due on or before October 15, 2021, and the 2021 Form 5500, due on or before October 15, 2022, and (iii), until in or about late December 2022, failed to provide the CPES ESOP participants with participant account statements since they did so in 2019 for the 2018 plan year. The ESOP Plan Administrator is required to provide participant account statements to the ESOP participants each year. 29 U.S.C. § 1025(a)(1)(A)(ii). The Plaintiffs and all CPES ESOP participants each have had a pressing need for an accounting of their retirement benefits in the form of their participant account statements, including at significant times such as upon their termination of employment from CPES-AZ, any disability, and/or their vesting upon the filing of the Bankruptcy Proceeding (if not sooner). Because the Plaintiffs and all CPES ESOP participants have been unable to receive such an accounting, his or her financial planning has been impaired and his or her effort to enforce the rights and fiduciary obligations imposed by ERISA have been severely hampered.

23.     Moreover, the proofs of claims in the Bankruptcy Proceeding filed by or on behalf of the CPES ESOP participants (whether individually or as part of a "class claim") and the proof of claim filed by the present CPES ESOP Trustee [CPES Bankruptcy Claim No. 274] do not provide for the relief requested herein.

24.     Accordingly, in order to preserve and enforce their rights and those of all of the CPES ESOP participants, Plaintiffs bring this action for the benefit of the Plan.

25.     To that end, the Bankruptcy Court's Confirmation Order expressly provides that "[n]othing in the Plan or this Confirmation Order will affect the rights of any CPES ESOP participant or beneficiary with respect to any claims or causes of action held by any CPES ESOP participant or beneficiary, to the extent any such claims or causes of action exist". [CPES Bankruptcy Docket No. 836, at ¶ 37.] The claims and causes of action set forth herein under ERISA Sections 502(a) and 502(c), 29 U.S.C. §§ 1132(a) and 1132(c), are such claims or causes of action.

26.     This class action is thus brought under ERISA Sections 404, 405, 409, 502(a), and 502(c)(1)(A), 29 U.S.C. §§ 1104, 1105, 1109, 1132(a), and 1132(c)(1)(A), for losses suffered by the Plan and its participants, and other relief, caused by Defendants. The Plan has

CLASS ACTION COMPLAINT FOR
VIOLATIONS OF ERISA

been injured and its participants have been deprived of hard-earned retirement benefits resulting from Defendants' violations of ERISA. Plaintiffs thus bring this action under ERISA to vindicate their rights to be free from Defendants' various breaches of ERISA, including their ERISA fiduciary duties, and to seek recovery on behalf of the Plan from those who are personally liable to make good such losses.

27.    When ERISA's strict fiduciary standards are not satisfied, ERISA permits the participants of an ERISA plan (here, the CPES ESOP) to seek relief under ERISA Sections 409(a) and 502(a), 29 U.S.C. §§ 1109(a) and 1132(a), to restore plan losses, to recover unjust profits and to obtain other remedial and equitable relief as a court may deem appropriate.

28.    Not only may fiduciaries be held directly responsible for losses and other relief for their own misconduct, but their co-fiduciaries also may be held liable for losses and other relief when those co-fiduciaries participate in, enable or fail to remedy another fiduciary's breach. ERISA Section 405(a)(1)-(3), 29 U.S.C. § 1105(a)(1)-(3).

29.    Plaintiffs also bring this action under ERISA under the authority of *LaRue v. DeWolff, Boberg, and Associates, Inc.*, 552 U.S. 248 (2008), which involved a defined contribution plan like the CPES ESOP, and further demonstrated that "[ERISA] §§ 409(a) and 502(a)(2) [29 U.S.C. §§ 1109 and 1132(a)(2)] permit recovery of *all* plan losses caused by a fiduciary breach". *LaRue*, 552 U.S. at 261 (Thomas, J., concurring).

## JURISDICTION AND VENUE

30.    <u>Subject Matter Jurisdiction</u>. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331, and ERISA Section 502(e)(2), 29 U.S.C. §1132(e)(2).

31.    <u>Personal Jurisdiction</u>. This Court has personal jurisdiction over Defendants under ERISA Section 502(e)(2), 29 U.S.C. § 1132(e)(2), which provides for nationwide service of process.

32.    <u>Venue</u>. Venue is proper in this District pursuant to ERISA Section 502(e)(2), 29 U.S.C. § 1132(e)(2), because (i) the Defendants' breaches and violations of ERISA occurred in this District and/or affected those participants in this District, (ii) because the CPES ESOP

was administered in this District, and (iii) because at least one of the Defendants may be found in this District.

## THE PARTIES

### A.    The Plaintiffs

33.    The named Plaintiffs and the proposed Class members are all participants or beneficiaries in the CPES ESOP, as defined by ERISA Section 3(7) and (8), 29 U.S.C. § 1002(7) and (8), who were vested in shares of CPES allocated to their accounts in the Plan. There are believed to be in excess of 1,300 current and former CPES-AZ employees who are participants or their beneficiaries in the CPES ESOP.

34.    Plaintiff Robert Bennetti is a former employee of CPES-AZ. Mr. Bennetti is a participant of the CPES ESOP within the meaning of ERISA Section 3(7), 29 U.S.C. § 1002(7). He resides in Tucson, Arizona.

35.    Plaintiff Linda Mariano is a former employee of CPES-AZ. Ms. Mariano is a participant of the CPES ESOP within the meaning of ERISA Section 3(7), 29 U.S.C. § 1002(7). She resides in Tucson, Arizona.

36.    Plaintiff Linki Peddy is a former employee of CPES-AZ. Ms. Peddy is a participant of the CPES ESOP within the meaning of ERISA Section 3(7), 29 U.S.C. § 1002(7). She resides in Tucson, Arizona.

### B.    The Defendants

37.    Defendant Mark G. Monson is believed to now be a citizen of Wisconsin and to reside in or around Land O' Lakes, Wisconsin. Defendant Monson is subject to the jurisdiction and venue of this Court under ERISA Section 502(e)(2), 29 U.S.C. § 1132(e)(2).

38.    Defendant David Johnson is a citizen of Arizona and resides in or around Tucson, Arizona. Defendant Johnson is subject to the jurisdiction and venue of this Court under ERISA Section 502(e)(2), 29 U.S.C. § 1132(e)(2).

39.    Defendant Douglas Zimmerman is a citizen of Arizona and a resides in or around Tucson, Arizona. Defendant Zimmerman is subject to the jurisdiction and venue of this Court under ERISA Section 502(e)(2), 29 U.S.C. § 1132(e)(2).

CLASS ACTION COMPLAINT FOR
VIOLATIONS OF ERISA

40.     Defendant Alberto J. Tarajano is believed to be a citizen of either Florida or North Carolina and resides either in or around Key Biscayne, Florida or Chapel Hill, North Carolina. He is subject to the jurisdiction and venue of this Court pursuant to 28 U.S.C. § 1390, 29 U.S.C. § 1132(e)(2).

### C.     The Board Defendants

41.     At all times relevant, Defendant Johnson (as Chairman of the CPES Board of Directors), Defendant Monson (as CPES Chief Executive Officer), and Defendant Zimmerman were members of the Board of Directors of CPES-AZ (collectively, the "Board Defendants").

42.     The Board Defendants were and have been fiduciaries of the CPES ESOP within the meaning of ERISA Section 3(21)(A), 29 U.S.C. § 1002(21)(A).

### D.     The CPES ESOP

43.     Since 1994, all of the shares of CPES capital stock have been held by the CPES ESOP. The present CPES ESOP was adopted as an amendment and restatement of the Community Psychology & Education Services, Ltd. Employee Stock Ownership Plan, which originally was adopted on May 31, 1995, effective as of July 1, 1994. As of July 1, 2004, the CPES ESOP was renamed the CPES Employee Stock Ownership Plan.

44.     Nominal Defendant the CPES ESOP is an "employee pension benefit plan" within the meaning of ERISA Section 3(21)(A), 29 U.S.C. § 1002(21)(A). The CPES ESOP is a "defined contribution plan" within the meaning of ERISA Section 3(34), 29 U.S.C. § 1002(34), and an employee stock ownership plan under ERISA Section 407(d)(6), 29 U.S.C. § 1107(d)(6), that was intended to meet the requirements of Section 4975(e)(7) of the Internal Revenue Code (the "Tax Code") and IRS Regulations § 54.4975-11. The CPES ESOP is a stock bonus plan under 29 U.S.C. § 401(a). The CPES ESOP Trust established under the CPES ESOP was designed to invest primarily in CPES Stock.

45.     The CPES ESOP is named as a nominal defendant pursuant to Federal Rule of Civil Procedure 19 to ensure that complete relief can be granted as to Plaintiffs' claims and those brought on behalf of the Class.

CLASS ACTION COMPLAINT FOR
VIOLATIONS OF ERISA

46.     The written instrument by which the CPES ESOP is maintained within the meaning of ERISA Section 402, 29 U.S.C. § 1102, is the "Community Provider of Enrichment Services, Inc. Employee Stock Ownership Plan, as Amended and Restated, Effective January 1, 2015 (Except as otherwise indicated herein)", including "Amendments 1-4 incorporated into Plan Document" (collectively, the "CPES ESOP Plan Document").

47.     Essentially, after an employee satisfies certain eligibility requirements under the CPES ESOP Plan Document, the employee automatically becomes a CPES ESOP participant and thereafter becomes a beneficial owner of CPES through allocations of CPES stock pursuant to the terms of CPES ESOP Plan Document, ERISA, and the U.S. Tax Code. The Plaintiffs and the proposed Class members have all satisfied the necessary eligibility requirements and are vested participants in or beneficiaries of the CPES ESOP.

48.     The CPES ESOP is governed by ERISA, the CPES ESOP Plan Document, the "CPES Employee Stock Ownership Trust Agreement", dated May 13, 2016 (the "CPES ESOP Trust Agreement"), and the "CPES Employee Stock Ownership Plan Distribution Policy, Effective for Distributions Made on/After October 23, 2019" (the "Distribution Policy"), and, to the extent not superseded by ERISA, Arizona state law.

49.     Notice of such governing documents was and is provided to the CPES ESOP Participants in the "Summary Plan Description for the CPES Employee Stock Ownership Plan, as Revised Effective October 1, 2016" (the "CPES ESOP Summary Plan Description").

50.     In summary, the CPES ESOP Plan Document and the CPES ESOP Plan Trust Agreement describe the administration of the CPES ESOP, the holding of CPES-AZ stock under trust, and the rights and obligations of certain individuals thereunder.

51.     The purpose of the CPES ESOP was "to enable participating [CPES-AZ] Employees to share in the growth and prosperity of CPES[-AZ] and to provide Participants with an opportunity to accumulate capital for their future economic security. The primary purpose of the Plan [was] to enable [CPES ESOP] Participants to acquire stock ownership interests in CPES[-AZ]". [CPES ESOP Plan Document, at Section 1 (Nature of Plan).] The CPES ESOP also was designed, among other things, "[t]o provide Participants with beneficial

CLASS ACTION COMPLAINT FOR
VIOLATIONS OF ERISA

1  ownership of CPES[-AZ] Stock, substantially in proportion to their relative Compensation and

2  years of Credited Service". [*Id.*]

3          **E.**     ***The CPES ESOP Plan Administrator***

4        52.     The Plan Administrator of the CPES ESOP has exclusive responsibility and

5  authority to control and manage the operation and administration of the Plan.

6        53.     Under the CPES ESOP Plan Document, CPES-AZ, the Plan Sponsor of the

7  CPES ESOP, was designated as the Plan Administrator. [CPES ESOP Plan Document, at

8  Section 2 (Definitions) ("CPES shall be the Plan Administrator (as defined in Section 3(16)(A)

9  of ERISA and Section 414(g) of the Code) for purposes of the reporting and disclosure

10  requirements of ERISA and the Code. See Section 16.(h).").]

11        54.     The duties of the CPES ESOP Plan Administrator are varied, and include, among

12  other things: (i) reviewing and signing the annual Form 5500; (ii) approving or rejecting

13  distributions to the CPES ESOP participants in accordance with the CPES ESOP Plan

14  Document and Trust Agreement; (iii) fixing Plan operational and compliance errors; (iv)

15  monitoring and ensuring adequate CPES ESOP participant education; (v) tracking, applying,

16  and communicating eligibility rules and actions to the CPES ESOP participants; (vi) selecting,

17  documenting, and evaluating Plan service providers; (vii) providing all Plan service providers

18  with complete and identical plan documentation; (viii) performing and documenting annual

19  reviews of all Plan service providers; (ix) assuring and documenting all Plan notifications and

20  communications to the CPES ESOP participants; (x) storing, maintaining, and assuring

21  compliance with the CPES ESOP Plan Document and Trust Agreement; (xi) ensuring annual

22  custodian issuance of 1099-R statements to all CPES ESOP participants; (xii) approving all

23  Plan expenses paid from Plan in accordance the CPES ESOP Plan Document and Trust

24  Agreement; (xiii) monitoring and benchmarking fees and expenses paid from Plan assets; (xiv)

25  reviewing and ensuring that billings and expenses are correct and accurate; and (xv)

26  responding to CPES ESOP participant or Plan sponsor questions in timely manner.

27        55.     Under ERISA Section 3(16)(A), 29 U.S.C. § 1002(16)(A), "the term

28  'administrator' means—(i) the person specifically so designated by the terms of the instrument

CLASS ACTION COMPLAINT FOR
VIOLATIONS OF ERISA

under which the plan is operated; (ii) if an administrator is not so designated, the plan sponsor or (iii) in the case of a plan for which an administrator is not designated and a plan sponsor cannot be identified, such other person as the Secretary may by regulation prescribe. *See also* 29 CFR § 2510.3-16.

56.    Under ERISA Section 3(16)(B), 29 U.S.C. § 1002(16)(B), "[t]he term "plan sponsor' means (i) the employer in the case of an employee benefit plan established or maintained by a single employer.

57.    Under ERISA Section 3(5), 29 U.S.C. § 1002(5), "[t]he term 'employer' means any person acting directly as an employer, or indirectly in the interest of an employer, in relation to an employee benefit plan; and includes a group or association of employers acting for an employer in such capacity."

58.    At all times relevant, the Board Defendants were persons acting indirectly in the interest of any employer in relation to the CPES ESOP and controlled the actions of the CPES ESOP Plan Administrator.

59.    The CPES ESOP Plan Document contemplates that an ESOP Administrative Committee would administer the Plan. [CPES ESOP Plan Document, at Section 16(a) ("The members of the Committee shall be the named fiduciaries with authority to control and manage the operation and administration of the Plan. Members of the Committee need not be Employees or Participants").]

60.    The CPES ESOP Plan Document also contemplates that the members of such ESOP Administrative Committee would be ERISA fiduciaries. [*Id.*, at Section 16(c) ("The Committee shall perform its duties under the Plan and the Trust Agreement solely in the interests of the Participants (and their Beneficiaries). Any discretion granted to the Committee under any of the provisions of the Plan or the Trust Agreement shall be exercised only in accordance with rules and policies established by the Committee which shall be applicable on a nondiscriminatory basis. The Committee shall have the sole and exclusive authority to construe, interpret and apply the terms of the Plan. The Committee shall be given the greatest possible deference permitted by law in exercise of such discretionary authority").]

CLASS ACTION COMPLAINT FOR
                                                        VIOLATIONS OF ERISA

61.     The CPES ESOP Administrative Committee, however, did not actually perform the contemplated functions of such Committee and was illusory. The CPES Board of Directors and the Board Defendants performed such functions instead.

62.     Thus, for example, while the CPES ESOP Plan Document contemplates that the CPES ESOP Administrative Committee would conduct annual valuations of the fair market value of CPES common stock for purposes of the annual Form 5500 filings and for other purposes [*Id.*, at Section 2 (Definition of "Fair Market Value") ("The fair market value of CPES Stock (and/or other Trust Assets as appropriate), as determined by the Committee in good faith (as described in U.S. Treasury Department Regulations Section 54.4975-11(d)(5)) for all purposes under the Plan based upon a valuation by an independent appraiser (as defined in Section 401(a)(28)(C) of the [U.S. Tax] Code) on an enterprise basis as of the Valuation Date"), the CPES ESOP Administrative Committee did not actually perform the contemplated functions of such Committee and was illusory. The CPES Board of Directors and the Board Defendants instead performed such functions.

63.     Similarly, while the CPES ESOP Plan Document contemplates that the CPES ESOP Administrative Committee would direct the CPES ESOP Trustee with respect to certain functions [*see*, *e.g.*, *id.*, at Sections 5(c), 11, 13, 16(c), 16(e), 16(g), 16(i)], the CPES ESOP Committee did not actually perform the contemplated functions of such Committee and was illusory. The CPES Board of Directors and the Board Defendants instead performed such functions.

64.     At all times relevant, Monson and the Board Defendants were acting as Plan Administrator of the CPES ESOP and, as such, were ERISA fiduciaries.

### F.     *The Trustee Defendant*

65.     At all times relevant, Defendant Tarajano served as a trustee of the CPES ESOP (the "Trustee Defendant").

66.     In or about January 2019, CPES-AZ contacted Defendant Tarajano for the purpose of becoming an ESOP Trustee for the purposes of evaluating an offer made to CPES-AZ for the purchase of either all of the stock of CPES-AZ or all of substantially all of the

assets of CPES-AZ, Novelles, and CPES-CA, and otherwise being the independent fiduciary and trustee of the CPES ESOP. In or about April 2019, CPES-AZ hired Defendant Tarajano to become the CPES ESOP Trustee. On or about August 6, 2019, CPES and the Board Defendants later "papered" that hiring with a retention agreement notwithstanding that Defendant Tarajano had assumed such duties in or about April 2019.

67.     On or about April 16, 2020, Defendant Tarajano abruptly "resigned" and was replaced by a successor ESOP Trustee (Miguel Paredes).

68.     Pursuant to Section 16 of the CPES ESOP Plan Document, the Trustee Defendant is a named fiduciary of the CPES ESOP within the meaning of ERISA Section 402, 29 U.S.C. § 1102. Defendant Tarajano also was, at all times relevant, a fiduciary of the CPES ESOP within the meaning of ERISA Section 3(21)(A), 29 U.S.C. § 1002(21)(A).

69.     The Board Defendants also acted as a *de facto* CPES ESOP Trustee, especially during the bankruptcy, to the extent that they controlled and/or directed any other CPES ESOP Trustee. To that extent, the Board Defendants also are included as Trustee Defendants.

### G.     The DOE Defendants

70.     Plaintiffs do not presently know the identity of other individuals involved in the events described herein. When Plaintiffs ascertain the identities of those not currently named, if any, Plaintiffs will either amend without leave as permitted or seek leave to join them under their true names.

## CLASS ACTION ALLEGATIONS

71.     Plaintiffs bring certain of these claims for (i) plan-wide relief pursuant to ERISA Section 502(a)(2), 29 U.S.C. § 1132(a)(2), (ii) for relief against any Defendant, whether acting in a fiduciary or a non-fiduciary capacity, under ERISA Section 502(a)(3), 29 U.S.C. § 1132(a)(3), and (iii) as a class action pursuant to Federal Rule of Civil Procedure 23(a) and on behalf of the following Class:[2]

---

[2] Plaintiff reserves the right to revise the class definition, and to propose other or additional classes or sub-classes in subsequent pleadings or a motion for class certification, after discovery in this action.

All participants in the CPES ESOP on or after December 31, 2018, who vested under the terms of the CPES ESOP, and those participants' beneficiaries, excluding Defendants and their immediate family members; any fiduciary of the Plan; the directors of CPES or of any entity in which a Defendant has a controlling interest; and any legal representatives, successors, and assigns of any such excluded persons.

72.     ERISA Section 502(a)(2), 29 U.S.C. § 1132(a)(2), provides that "[a] civil action may be brought ... by a participant, beneficiary or fiduciary for appropriate relief under [ERISA Section 409, 29 U.S.C.] section 1109." In turn, ERISA Section 409(a), 29 U.S.C. § 1109(a), states that any fiduciary with respect to an ERISA plan who breaches "any of the responsibilities, obligations, or duties imposed upon fiduciaries by this subchapter *shall be personally liable to make good to such plan any losses resulting from each such breach*." (Emphasis supplied.)

73.     The Supreme Court has explained that Plaintiffs' ERISA Section 502(a)(2), 29 U.S.C. § 1132(a)(2), claims are necessarily "brought in a representative capacity on behalf of the plan as a whole." *Mass. Mut. Life Ins. Co. v. Russell*, 473 U.S. 134, 142 (1985). In other words, the relief Plaintiffs seek pursuant to ERISA Section 502(a)(2), 29 U.S.C. § 1132(a)(2), "inures to the benefit of the plan *as a whole*". *Id.* at 140.

74.     *LaRue v. DeWolff, Boberg, and Associates, Inc.*, 552 U.S. 248 (2008), which involved a defined contribution plan like the CPES ESOP, further demonstrated that "[ERISA] §§ 409(a) and 502(a)(2) [29 U.S.C. §§ 1109 and 1132(a)(2)] permit recovery of *all* plan losses caused by a fiduciary breach." *LaRue*, 552 U.S. at 261 (Thomas, J., concurring).

A.     *Numerosity*

75.     The members of the Class are so numerous that joinder of all members is impracticable. According to the ESOP's 2018 Form 5500 filed with the DOL on October 10, 2019, as of December 31, 2018, there were 1,323 participants at the beginning of the 2018 Plan year and 1,177 participants with account balances within the meaning of ERISA Section 3(7), 29 U.S.C. § 1002(7), in the ESOP at the end of 2018.

76.     According to the ESOP's 2019 Form 5500, belatedly filed with the DOL on April 23, 2021 – it was due to be filed no later than October 15, 2020 – as of December 31,

2019, there were 1,315 participants at the beginning of the 2019 Plan year and 1,248 participants with account balances within the meaning of ERISA Section 3(7), 29 U.S.C. § 1002(7), in the ESOP at the end of 2019.

77.     As of the date hereof, the Plan Administrator for the CPES ESOP has failed to file an IRS Form 5500 for the 2020 and 2021 Plan years, which such filing was due no later than October 15, 2021, and only recently, in or about late December 2022, belatedly provided the CPES ESOP participants with their ESOP account statements since the Plan Administrator provided them with the 2018 ESOP account statements at some point in 2019.

### B.     Commonality

78.     The issues of liability are common to all members of the Class and are capable of common answers, as those issues primarily focus on Defendants' acts or failure to act. Questions of law and fact common to the Class as a whole include the following:

a.     Whether Defendants dealt with the assets of the CPES ESOP in their own interest or for their own account or received any consideration for their own account from any party dealing with the CPES ESOP in connection with the valuation of CPES-AZ as of December 31, 2018, the 2018 From 5500 and any distributions made thereunder, the Bankruptcy Proceeding, and any other or related transactions.

b.     Whether Defendants, in discharging their responsibilities as ERISA and state law fiduciaries with respect to valuation of CPES as of December 31, 2018, the 2018 From 5500 and any distributions made thereunder, the Bankruptcy Proceeding, and any other or related transactions, acted solely in the best interests of the CPES ESOP participants, acted for the exclusive purpose of providing benefits to the CPES ESOP participants, and/or acted with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent person acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims.

c.     Whether Defendants, through their failure to discharge their responsibilities as fiduciaries in connection with the valuation of CPES-AZ as of December 31, 2018, the 2018 From 5500 and any distributions made thereunder, the Bankruptcy

Proceeding, and any other or related transactions, enabled other fiduciaries to breach their duties to the Plan or, having knowledge of a breach by such other fiduciary, failed to make reasonable efforts under the circumstances to remedy their breaches of fiduciary duties or those of others.

d.     Whether Defendants used the Bankruptcy Proceeding to shield themselves from personal liability for their actions, including, without limitation, the sheltering of officers and directors and fiduciaries, the wasting of the assets of CPES-AZ, Novelles, and CPES-CA, and the wasting of the retirement plans of the Plaintiffs and Class members.

e.     The appropriate remedies as a result of Defendants' fiduciary breaches and prohibited transactions, and other violations of ERISA.

### C.     *Typicality*

79.     Plaintiffs' claims are typical of those of the Class because their claims arise from the same events, practices, and/or course of conduct. For example, Plaintiffs' claims, on behalf of the Class, allege that Defendants engaged in prohibited transactions or breaches of fiduciary duty in connection with the valuation of CPES as of December 31, 2018, the 2018 From 5500 and any distributions made thereunder, and any other or related transactions that adversely affected the ESOP and all of the ESOP participants. Plaintiffs' claims also are typical of the claims of the Class, because they generally seek recovery and relief on behalf of the Plan.

### D.     *Adequacy*

80.     Plaintiffs will fairly and adequately represent and protect the interests of the Class.

81.     Plaintiffs do not have any interests antagonistic to or in conflict with those of the Class.

82.     Defendants do not have any unique defenses that would interfere with Plaintiffs' representation of the Class.

CLASS ACTION COMPLAINT FOR
VIOLATIONS OF ERISA

83.    Plaintiffs have retained legal counsel competent and experienced in complex class actions, ERISA, and/or employee benefits litigation and with particular experience and expertise in ESOP litigation of this kind.

**E.    Fed. R. Civ. P. 23(b)(1)(A)**

84.    Class certification is appropriate pursuant to Fed. R. Civ. P. 23(b)(1)(A). Fiduciaries of ERISA-covered plans have a legal obligation to act consistently with respect to all similarly situated participants and to act in the best interests of the Plan and their participants. This action challenges whether Defendants acted consistently with their fiduciary duties or otherwise violated ERISA as to the CPES ESOP as a whole. As a result, the prosecution of separate actions by individual members would create the risk of inconsistent or varying adjudications that would establish incompatible standards of conduct relating to the Plan.

**F.    Fed. R. Civ. P. 23(b)(1)(B)**

85.    Class certification also is appropriate pursuant to Fed. R. Civ. P. 23(b)(1)(B). Administration of an ERISA-covered plan requires that all similarly situated participants be treated the same. Resolving whether Defendants fulfilled their ERISA fiduciary obligations to the Plan would, as a practical matter, be dispositive of the interests of the other participants in the CPES ESOP even if they are not parties to this litigation and would substantially impair or impede their ability to protect their interests if they are not made parties to this litigation by being included in the Class.

**G.    Fed. R. Civ. P. 23(b)(2)**

86.    Class certification is appropriate pursuant to Fed. R. Civ. P. 23(b)(2) because Defendants have acted or refused to act on grounds generally applicable to the Class, making declaratory and injunctive relief appropriate with respect to Plaintiff and the Class as a whole. This action challenges whether Defendants acted consistently with their ERISA and state law fiduciary duties and thereby violated ERISA as to the ESOP as a whole. The members of the Class are entitled to declaratory and injunctive relief to remedy Defendants' violations. As ERISA is based on trust law, any monetary relief consists of equitable monetary relief and is

CLASS ACTION COMPLAINT FOR
VIOLATIONS OF ERISA

1  either provided directly by the declaratory or injunctive relief or as a necessary consequence
2  of that relief.

3       ### H.    Fed. R. Civ. P. 23(b)(3)

4       87.    The requirements of Fed. R. Civ. P. 23(b)(3) also are satisfied. Common
5  questions related to liability will necessarily predominate over any individual questions
6  precisely because Defendants' duties and obligations were uniform to all ESOP participants
7  and therefore to all members of the Class. Plaintiffs and all Class members have been harmed
8  by Defendants' ERISA fiduciary breaches. As relief and any recovery will be on behalf of the
9  Plan, common questions as to remedies will likewise predominate over any individual issues.

10      88.    A class action is a superior method to other available methods for the fair and
11 efficient adjudication of this action. As the claims herein are brought on behalf of the Plan,
12 resolution of the issues in this litigation will be efficiently resolved in a single proceeding
13 rather than multiple proceedings, each of which could seek recovery for the entire Plan. The
14 amounts recoverable by individual Class members are small compared to the expense and
15 burden of individual prosecution of this action. In addition, class certification is superior
16 because it will obviate the need for unduly duplicative litigation which might result in
17 inconsistent judgments about Defendants' ERISA fiduciary duties with regard to the ESOP
18 and otherwise.

19      89.    The following factors set forth in Rule 23(b)(3) also favor certification of this
20 case as a class action:

21           a.    The members of the Class have an interest in a unitary adjudication of the
22 issues presented in this action for the reasons that this case should be certified under Rule
23 23(b)(1).

24           b.    No other litigation concerning this controversy has been filed by any
25 other member(s) of the Class.

26           c.    There are no anticipated difficulties in managing this case as a class
27 action.

28

CLASS ACTION COMPLAINT FOR
VIOLATIONS OF ERISA

d.    This District is the most desirable location for concentrating the litigation for reasons that include, but are not limited to the following: (i) CPES-AZ was headquartered in this District; (ii) the CPES ESOP was administered in this District; (iii) certain non-party witnesses are located in this District; and (iv) most the Defendants and Class members reside, work, and/or transact business in this District.

90.    ERISA allows an action to be brought on behalf of a Class of participants in and beneficiaries of the CPES ESOP to restore losses to the CPES ESOP, disgorge any profits, and to obtain other remedies arising out of the current and former fiduciaries breaches of fiduciary duties and other violations of ERISA. Plaintiffs seek to enforce their rights and those of other participants in the Plan under ERISA, to recover the losses incurred by the Plan as a result of the breaches of fiduciary duty or other violations of ERISA, and to ensure that the Plan and its assets have been properly administered. Among the relief sought for these breaches and violations, Plaintiffs request that the breaching fiduciaries be ordered to pay the losses to the Plan, to disgorge any profits, that the Court order other remedial and equitable relief and that any monies recovered for the Plan be allocated to the accounts of the Class Participants.

## ADDITIONAL FACTUAL ALLEGATIONS

91.    Beginning sometime in 2019 and continuing through approximately March or April 2020, the CPES Board of Directors entertained at least one offer to purchase the stock of CPES-AZ, including Novelles and CPES-CA, for at least $12,250,000 from National Mentor Holdings, LLC, and believed to approximately be upwards of $15.05 per share.

92.    In or about January, 2019, CPES-AZ contacted Defendant Tarajano for the purpose of becoming the ESOP Trustee and to evaluate such an offer. In or about April 2019, CPES-AZ hired Defendant Tarajano to become the CPES ESOP Trustee. On or about August 6, 2019, CPES and the Board Defendants later retroactively "papered" that hiring with a retention agreement notwithstanding that Defendant Tarajano had assumed such duties in April 2019.

93.    During 2019, the CPES Board of Directors was "evaluating a transaction or series of transactions whereby National Mentor Holdings LLC or its affiliate … would either

CLASS ACTION COMPLAINT FOR
VIOLATIONS OF ERISA

(a) acquire the stock of the Company [CPES] from the CPES Employee Stock Ownership Trust [], which implements and forms a part of the CPES Employee Stock Ownership Plan [] or (b) acquire all or substantially all of the assets of the Company [CPES] and its Subsidiaries [Novelles and CPES California]". [Tarajano Trustee Services Agreement, dated August 6, 2019, at Recital 1.]

94.     In addition to all of the powers and obligations under the CPES ESOP Plan Document and the CPES ESOP Trust Agreement, Defendant Tarajano was required to engage a qualified independent appraiser so that he could evaluate the proposed transaction. [*Id.*, at Section 3.] Instead, either at the insistence of the CPES Board of Directors or with their consent, Defendant Tarajano used an appraiser (Brueggeman and Johnson Yeanoplos, P.C.) that already had been hired by the CPES Board of Directors and had been used by CPES-AZ to conduct valuations of CPES-AZ for a number of previous years.

95.     Based upon the sworn testimony of Defendant Tarajano in the Bankruptcy Proceeding, the initial proposed appraisal conducted by Brueggeman and Johnson Yeanoplos, P.C., in approximately early May, 2019, valued the shares of CPES-AZ at $5.92 per share, or, based upon 912,435 issued and outstanding shares of CPES-AZ, valued CPES-AZ at approximately $5,401,615.20.

96.     The Trustee Defendants and the Board Defendants, however, improperly inflated and increased that valuation to $12.04 per share, or, based upon 912,435 issued and outstanding shares of CPES-AZ, valued CPES-AZ at approximately $10,990,000. Without justification or excuse, they unilaterally changed or caused to be changed the methodologies and methods of appraisals previously used by Brueggeman and Johnson Yeanoplos, P.C. from a combination of Discounted Cash Flow method (weighed at 75%) and Guideline Public Companies method (weighed at 25%) to a 100% weighted asset-based method, and included incorrect assumptions and contained errors, including improperly subscribing value to the CPES workforce as an intangible asset in violation of accepted and best practices.

97.     The appraisal of CPES-AZ as of December 31, 2018, formed the basis of the CPES ESOP's 2018 year-end Form 5500 filing with the DOL on or about October 10, 2019,

and signed by Defendant Monson. The 2018 Form 5500 for the CPES ESOP sets forth that, as of December 31, 2018, the CPES shares of common stock owned by the CPES ESOP Participants were valued by the CPES ESOP Board of Directors and the ESOP Trustees at $12.04. That share price was then promoted on the CPES website with the claim that "our share price has recently increased by 18.74%" (formerly https://www.cpes.com/employees) until the CPES website was removed. The publicly available report filed with the DOL shows the aggregate value of CPES shares as of December 31, 2018 as $10,985,723, and the number of shares of company stock held by the CPES ESOP as 912,435, consistent with the $12.04 per share price on the statements therein.

98.     Based upon that inflated appraisal, Defendants caused CPES-AZ to pay inflated distributions to certain CPES ESOP participants in an amount to be further determined at trial but believed to be in excess of $327,304.29. CPES-AZ and the CPES ESOP are believed to have paid in excess of $644,299.78 in distributions based upon the 2018 Form 5500 valuation. As such, the approximate amount of the overpaid distributions based upon that valuation is at least $327,304.29.

99.     Consistent with this, on May 28, 2020, at the initial 341(a) Meeting of Creditors in the bankruptcy proceeding, CPES CEO Defendant Monson, was questioned, and, among other things, provided sworn information (i) that the Debtors' management had been trying to sell CPES for many months; (ii) that CPES was going to file motions to sell CPES through a Section 363 sale; and (iii) that 2018 year-end valuation of CPES upon which the CPES ESOP 2018 Form 5500 was based was intentionally inflated.

100.     In addition, on May 28, 2020, at the initial 341(a) Meeting of Creditors in the bankruptcy proceeding, Defendant Monson testified that, prior to the Board Defendants' and Trustee's acceptance and approval of valuation of CPES as of December 31, 2018, the independent appraiser for the CPES ESOP servicing the Trustee Defendants identified an approximately forty (40%) reduction in the fair market value of the CPES stock held by the CPES ESOP from the previous year as appropriate for December 31, 2018, consistent with Defendant Tarajano's testimony of a proposed reduction in value from $10.14 per share in

CLASS ACTION COMPLAINT FOR
VIOLATIONS OF ERISA

2017 to $5.92 per share in 2018. The change in valuation methodology implemented by Defendant Tarajano, Defendant Monson, the Board Defendants and the Trustee Defendants resulted in an increase in value by approximately 23% from the previous year (a sixty-three percent (63%) difference from what Defendant Monson testified the CPES stock was worth as of December 31, 2018, during his May 28, 2020, testimony). The 2018 Form 5500 audit report reflects this shift in valuation methodology, stating:

> As of December 31, 2018, the appraisal was based upon the cost or asset approach. The appraiser took into account the sponsor's individual assets and liabilities and adjusting them to reflect their fair value.

> As of December 31, 2017, the appraisal was based upon a combination of the market and income valuation techniques consistent with prior years. The appraiser took into account historical and projected cash flow and net income, invested capital, weighted average cost of capital, and market comparables.

[2018 Form 5500, p. 29 of 36.]

101.    The CPES Board of Directors and the Board Defendants refused to assist the Plaintiffs and the ESOP Participants to further corroborate this information. Moreover, the CPES Plan Administrator, namely, the CPES Board of Directors and the Board Defendants, failed to provide the CPES ESOP participants, including the Plaintiffs and the proposed Class, with their CPES ESOP participant account statements since the 2018 ESOP Plan year, in 2019.

102.    At all times relevant, Monson and the Board Defendants acted directly and indirectly in the interest of CPES-AZ, the Plan Sponsor and Plan Administrator, in relation to the CPES ESOP and the Plan Administrator's failure to provide annual participant account statements to the ESOP participants after the 2018 Plan year.

103.    Moreover, the Board Defendants, as members of the CPES Board of Directors responsible for monitoring the Trustee Defendants, failed to monitor the Trustee Defendants and, more egregiously, knowingly participated in the Trustee Defendants' breaches of fiduciary duty. Despite actual knowledge of the improper and incorrect valuation, the Board Defendants and the Trustee Defendants have not taken any action to properly protect the CPES

CLASS ACTION COMPLAINT FOR
VIOLATIONS OF ERISA

ESOP participants from the inflated valuation of the CPES stock held by the CPES ESOP. No action has been taken to correct the 2018 year-end valuation.

## CAUSES OF ACTION

### COUNT I
### Breaches of Fiduciary Duty Under ERISA Sections 404(a)(1)(A) and (B), 29 U.S.C. §§ 1104(a)(1)(A) and (B) – Inflated 2018 Year-End Valuation and Associated Distributions Made in Reliance Thereon (All Defendants )

104.    Plaintiffs hereby reallege and incorporate the allegations contained in paragraphs 1 through 103 as if the same has been set forth herein.

105.    ERISA Section 404(a)(1), 29 U.S.C. § 1104(a)(1), requires that a plan fiduciary discharge his or her duties with respect to a plan solely in the interest of the participants and beneficiaries of a plan, (A) for the exclusive purpose of providing benefits to participants and the beneficiaries of the plan, (B) with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent person acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims.

106.    The fiduciary duty of loyalty entails a duty to avoid conflicts of interest and to resolve them promptly when they occur. A fiduciary must always administer a plan with an "eye single" to the interests of the participants and beneficiaries, regardless of the interests of the fiduciaries themselves or the plan sponsor.

107.    The duties of loyalty under ERISA Section 404(a)(1)(A) and prudence under ERISA Section 404(a)(1)(B) required the Trustee Defendants and to the extent that the Board Defendants or others directed the Trustee Defendants in connection with the 2018 year-end appraisal, the Board Defendants and others to undertake an appropriate investigation of the fair market value of CPES stock in the 2018 year-end valuation in order to fulfill their fiduciary duties. Among other things, Trustee Defendants and the Board Defendants were required to conduct a thorough and independent review of any "independent appraisal", to make certain that reliance on any and all valuation experts' advice was reasonably justified under the

1    circumstances of the 2018 year-end valuation; to make an honest, objective effort to read and
2    understand the valuation reports and opinions and question the methods and assumptions.

3        108.    The Trustee Defendants and the Board Defendants were required to undertake
4    an appropriate and independent investigation of the fair market value of CPES as of December
5    31, 2018, in order to fulfill their respective fiduciary duties, and an appropriate investigation
6    would have revealed that the valuation used for December 31, 2018, did not reflect the fair
7    market value of the CPES stock held by the CPES ESOP.

8        109.    ERISA requires that the fair market value of the CPES ESOP's asset be
9    determined in good faith by the trustee or named fiduciary. ERISA further requires that the
10   trustee or named fiduciary conducted a prudent investigation to determine the fair market value
11   of the asset.

12       110.    The Trustee Defendants, Defendant Monson, and the Board Defendants knew
13   that the change in methodologies and errors and mistakes in the 2018 year-end valuation turned
14   an estimated forty-percent reduction in fair market value to an estimated sixty-three percent
15   increase. These fiduciaries knew that the 2018 year-end valuation did not reflect the fair market
16   value of the CPES stock, was not in the best interests of the Plan participants and distributions
17   made on the improper valuation would cause losses to the ESOP.

18       111.    Following the inflated valuation, the CPES ESOP made benefit payments based
19   on that valuation. Payments made on an inflated valuation will necessarily be inflated by a
20   factor equal to the over valuation. By Defendant Monson's testimony, that over-valuation
21   could be as high as 63%. Plaintiffs and the ESOP participants suffered losses to the value of
22   their shares of CPES capital stock based on these overpayments.

23       112.    By failing to make appropriate and independent investigation of the fair market
24   value of CPES as of December 31, 2018, the Trustee Defendants, Defendant Monson, and the
25   Board Defendants breached their fiduciary duties under ERISA Sections 404(a)(1)(A) & (B),
26   29 U.S.C. § 1104(a)(1)(A) & (B).

27       113.    Furthermore, Defendant Monson and the Board Defendants were required to
28   appoint an ESOP trustee or trustees who would discharge his or her duties to the Plan with the

CLASS ACTION COMPLAINT FOR
VIOLATIONS OF ERISA

loyalty, care, skill, prudence, and diligence required under ERISA. Instead they appointed the Trustee Defendants, who violated ERISA in approving the December 31, 2018 valuation as described herein.

114.    In addition, under ERISA Sections 404(a)(1)(A) and (B), a fiduciary with the authority to appoint and/or remove other fiduciaries has an obligation to undertake an appropriate investigation that the fiduciary is qualified to serve in the position as fiduciary and at reasonable intervals to ensure that the fiduciary who has been appointed remains qualified to act as fiduciary and is acting in compliance with the terms of the Plan and in accordance with ERISA.

115.    According to Section 16 of the CPES ESOP Plan Document, CPES "has the sole authority to appoint and remove the Trustee". Pursuant to that authority, Defendant Monson and the Board Defendants had a duty to monitor the CPES ESOP Trustees' conduct and to take appropriate action if the Trustee(s) and ESOP Committee were not adequately protecting the interests of CPES ESOP participants, including removing the CPES ESOP Trustees and correcting any breaches.

116.    Defendant Monson, the Board Defendants, and the Trustee Defendants knew or in the exercise of reasonable diligence should have known that the Trustee Defendants breached their fiduciary duties in that the 2018 year-end valuation did not reflect fair market value for the stock of CPES and took no steps to protect the CPES ESOP participants or to otherwise remedy the violations.

117.    Indeed, Defendant Monson, the Board Defendants, and the Trustee Defendants have taken no steps to protect the CPES ESOP participants from these breaches, including, but not limited to, stopping or delaying the 2018 year-end valuation, removing the CPES ESOP Trustees and/or remedying these breaches.

118.    By failing to properly monitor and/or take appropriate action against the Trustee Defendants, Defendant Monson and the Board Defendants have breached their fiduciary duties under ERISA Sections 404(a)(1)(A) & (B), 29 U.S.C. § 1104(a)(1)(A) & (B).

CLASS ACTION COMPLAINT FOR
VIOLATIONS OF ERISA

119.    ERISA Section 409, 29 U.S.C. § 1109, provides, *inter alia*, that any person who is a fiduciary with respect to a plan and who breaches any of the responsibilities, obligations, or duties imposed on fiduciaries by Title I of ERISA shall be personally liable to make good to the plan any losses to the plan resulting from each such breach, and additionally is subject to such other equitable or remedial relief as the court may deem appropriate, including removal of the fiduciary.

120.    ERISA Section 502(a), 29 U.S.C. § 1132(a), permits a plan participant to bring a suit for relief under ERISA Section 409 and to obtain appropriate equitable relief to enforce the provisions of Title I of ERISA or to enforce the terms of a plan.

121.    The Trustee Defendants, Defendant Monson and the Board Defendants have caused losses to the Plan by their breaches of fiduciary duty in amounts to be proved specifically at trial.

122.    An appropriate investigation by the Trustee Defendants and the Board Defendants would have revealed that the 2018 year-end valuation did not reflect the fair market value of CPES-AZ, was inflated and contained mistakes, and that the 2018 year-end valuation was not in the best interests of the CPES ESOP participants.

123.    An appropriate investigation by the Trustee Defendants and the Board Defendants would have revealed that the 2018 year-end valuation was conducted using an asset-based methodology that deviated from the enterprise basis required under Section 2 (Definition of Fair Market Value) of the CPES ESOP Plan Document.

124.    By causing CPES-AZ and the CPES ESOP to distribute monies to certain CPES ESOP Plan participants in improper and unjustifiable reliance upon the inflated 2018 year-end valuation, the Trustee Defendants and the Board Defendants violated the terms of the ESOP Plan Document and the ESOP Trust Agreement, breached their fiduciary duties under ERISA Sections 404(a)(1)(A) and (B), 29 U.S.C. § 1104(a)(1)(A) and (B), and caused losses to the CPES ESOP.

125.    To the extent that the Trustee Defendants acted at the direction of the Board Defendants in accepting the improperly inflated 2018 year-end valuation and/or in distributing

CLASS ACTION COMPLAINT FOR
VIOLATIONS OF ERISA

monies to certain CPES ESOP Plan participants in improper and unjustifiable reliance upon the inflated 2018 year-end valuation, the Board Defendants breached their fiduciary duties under ERISA Sections 404(a)(1)(A) and (B), 29 U.S.C. § 1104(a)(1)(A) and (B), and caused losses to the CPES ESOP.

126.    To the extent that the Trustee Defendants acted at the direction of the Board Defendants or anyone else, the Trustee Defendants still had an obligation under ERISA Section 403(a)(1), 29 U.S.C. § 1103(a)(2), to refuse to follow such direction that either violated the terms of the CPES ESOP Plan Document or that violated ERISA.

127.    ERISA Section 409, 29 U.S.C. § 1109, provides, *inter alia*, that any person who is a fiduciary with respect to a plan and who breaches any of the responsibilities, obligations, or duties imposed on fiduciaries by Title I of ERISA shall be personally liable to make good to the plan any losses to the plan resulting from each such breach, and additionally is subject to such other equitable or remedial relief as the court may deem appropriate, including removal of the fiduciary.

128.    Following the inflated valuation, the CPES ESOP made benefit payments based on that valuation. Payments made on an inflated valuation will necessarily be inflated by a factor equal to the over-valuation. By Defendant Monson's sworn testimony, that over-valuation could be as high as 63%. Plaintiffs and the Class members suffered losses to the value of their shares based on these overpayments.

129.    As a result, the Trustee Defendants and the Board Defendants breached their duties under ERISA Sections 404(a)(1)(A) and (B), 29 U.S.C. § 1104(a)(1)(A) and (B).

130.    The Trustee Defendants and the Board Defendants have caused losses to the Plan by their breaches of fiduciary duty in amounts to be proved specifically at trial.

CLASS ACTION COMPLAINT FOR
VIOLATIONS OF ERISA

## COUNT II
**Breaches of Fiduciary Duty Under ERISA Sections 404(a)(1)(A), (B) and (D),
29 U.S.C. §§ 1104(a)(1)(A), (B) and (D), for Failure to Remedy or
Correct the 2018 Year-End Valuation
(All Defendants)**

131.    Plaintiffs hereby reallege and incorporate the allegations contained in paragraphs 1 through 130 as if the same has been set forth herein.

132.    ERISA Section 404(a)(1), 29 U.S.C. § 1104(a)(1), requires that a plan fiduciary discharge his or her duties with respect to a plan solely in the interest of the participants and beneficiaries of the plan, (A) for the exclusive purpose of providing benefits to participants and the beneficiaries of the plan, (B) with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent person acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims, and (D) in accordance with the documents and instruments governing the plan to the extent that such documents and instruments are consistent with ERISA.

133.    Section 16(c) of the CPES ESOP Plan Document provides that the CPES ESOP Administrative Committee, and under circumstances applicable here, the Board Defendants, may "engag[e] any administrative, legal, accounting, clerical or other services that it may deem appropriate".

134.    Trustee Defendants also had the authority to engage any legal services they may deem appropriate to assist in the performance of their duties. For example, Defendant Tarajano's "Trustee Services Agreement" with CPES-AZ, Novelles, and CPES-CA permits him authority to retain and rely upon the advice of independent legal counsel. [Tarajano Trustee Services Agreement, at Section 4.]

135.    Section C(8) of the CPES ESOP Trust Agreement provides the Trustee Defendants with the authority to "sue, defend, compromise, arbitrate or settle any suit or legal proceeding or any claim due it or on which it may be liable". As such, the Trustee Defendants had the authority and obligation to institute a lawsuit against any fiduciary, including themselves, who breached his or her ERISA fiduciary duties with respect to the 2018 year-end

CLASS ACTION COMPLAINT FOR
VIOLATIONS OF ERISA

valuation and were required to remedy any ESOP losses arising from such valuation, including as necessary by employing counsel to bring a legal action to correct such ESOP losses from those personal responsible for such ESOP losses (including themselves). By failing to institute such a lawsuit, the Trustee Defendants breached his ERISA fiduciary duties.

136.    Sections 16(c)(9) and (10) of the CPES ESOP Plan Document grant to the CPES ESOP Administrative Committee, and under the circumstances here, to the Board Defendants, the power to "(9) review[] the performance of the Trustee with respect to the Trustee's administrative duties, responsibilities and obligations under the Plan and Trust Agreement; (10) select[] an independent appraiser and determining the Fair Market Value of CPES Stock as of such dates as it determines to be necessary or appropriate."

137.    As a result of such powers, the CPES ESOP Administrative Committee, and under the circumstances here, the Board Defendants, had the power, authority and obligation to do one or more of the following: (1) inform the Trustee Defendants that the 2018 year-end valuation and distributions made in reliance thereon were inappropriate and impermissible and would need to be corrected; (2) inform the Board of Directors that the 2018 year-end valuation and distributions made in reliance thereon had likely violated ERISA and the terms of the Plan and recommend that the breaching fiduciaries be removed and replaced with fiduciaries who would correct the 2018 year-end valuation and associated distributions; and/or (3) take steps to correct the defects therein, including if necessary by instituting a lawsuit against any fiduciary, including themselves, who breached his or her duties in the 2018 year-end valuation and associated distributions. By failing to take such steps that would correct the defects in the 2018 year-end valuation and associated distributions, the Board Defendants breached their fiduciary duties.

138.    Section 13.05 of the CPES ESOP Plan Document also provides that the "[s]hares of CPES Stock in the Trust shall be voted in the manner determined by the Trustee". As a result of this authority, the Trustee Defendants had the power to vote the Trust shares of CPES stock in a manner that would have removed the existing Board of Directors, appoint independent Directors who would act appropriately to remove and replace any person who had

1  breached their fiduciary duties (i.e., all of them), and replace them with members of the

2  Committee who would appropriately act to remedy the 2018 year-end valuation and associated

3  distributions. By failing to take such action, the Trustee Defendants breached their fiduciary

4  duties.

5  139.    By failing to correct the 2018 year-end valuation and associated distributions,

6  the Trustee Defendants breached their fiduciary duties under ERISA §§ 404(a)(1)(A), (B) and

7  (D), 29 U.S.C. §§ 1104(a)(1)(A), (B), and (D), and caused losses to the CPES ESOP and the

8  accounts of the Plaintiffs and Class Members.

9  140.    By failing to correct the 2018 year-end valuation and associated distributions,

10  the Board Defendants breached their fiduciary duties under ERISA §§ 404(a)(1)(A), (B) and

11  (D), 29 U.S.C. §§ 1104(a)(1)(A), (B), and (D), and caused losses to the CPES ESOP and the

12  accounts of the Plaintiffs and Class Members.

### COUNT III
**Breaches of Fiduciary Duty to Disclose and Inform Under
ERISA Sections 404(a)(1)(A) and (B), 29 U.S.C. §§ 1104(a)(1)(A) and (B)
(Against the Board Defendants)**

16  141.    Plaintiffs hereby reallege and incorporate the allegations contained in paragraphs

17  1 through 140 as if the same has been set forth herein.

18  142.    An ERISA fiduciary's duty of loyalty and prudence under ERISA Section

19  404(a)(1)(A) and (B) includes a duty to disclose and inform. Those duties not only require that

20  a fiduciary comply with the specific disclosure provisions in ERISA, but also require (a) a

21  duty not to misinform, (b) an affirmative duty to inform when the fiduciary knows or should

22  know that silence might be harmful, and (c) a duty to convey complete and accurate

23  information material to the circumstances of the participants and beneficiaries.

24  143.    Defendant Monson and the Board Defendants have failed to correct the

25  misinformation set forth herein, including the failure to correct the misinformation arising

26  from the 2018 year-end valuation.

27  144.    By failing to update the CPES ESOP participants with correct information,

28  Defendant Monson and the Board Defendants have violated ERISA Section 102, 29 U.S.C. §

CLASS ACTION COMPLAINT FOR
VIOLATIONS OF ERISA

1022, ERISA Section 104(b)(1), 29 U.S.C. § 1024(b)(1), and ERISA Sections 404(a)(1)(A) & (B), 29 U.S.C. §§ 1104(a)(1)(A) & (B).

145.    Defendant Monson and the Board Defendants have caused losses to the CPES ESOP by their breaches of fiduciary duty in amounts to be proved specifically at trial.

### COUNT IV
### Co-Fiduciary Liability Under ERISA Sections 405(a)(1)-(3),
### 29 U.S.C. §§ 1105(a)(1)-(3)
### (Against All Defendants)

146.    Plaintiffs hereby reincorporate and reallege the allegations contained in paragraphs 1 through 145 as if the same has been set forth herein.

147.    ERISA Section 405(a)(1), 29 U.S.C. § 1105(a)(1), makes a fiduciary of a Plan liable for another fiduciary of the same plan's breach when "he participates knowingly in, or knowingly undertakes to conceal, an act or omission of such other fiduciary, knowing such act or omission of such other fiduciary is a breach …".

148.    ERISA Section 405(a)(2), 29 U.S.C. § 1105(a)(2), makes a fiduciary of a Plan liable for another fiduciary of the same plan's breach when "by his failure to comply with section 404(a)(1) in the administration of his specific responsibilities which give rise to his status as a fiduciary, he has enabled such other fiduciary to commit a breach …".

149.    ERISA Section 405(a)(3), 29 U.S.C. § 1105(a)(3), makes a fiduciary of a Plan liable for another fiduciary of the same plan's breach "if he has knowledge of a breach by such other fiduciary, unless he makes reasonable efforts under the circumstances to remedy such breach".

150.    As set forth herein, as CPES ESOP fiduciaries, all of the Defendants (a) participated in the others' breach of duty, (b) enabled the others to breach their duties to the CPES ESOP related to various transactions described in this Complaint, (c) knew or should have known of the others' breaches of fiduciary duty and failed to take action regarding the various transactions described in this Complaint, and (d) failed to make reasonable efforts under the circumstances to remedy those breaches of duty. ERISA Sections 405(a)(1)-(3) and 502(a)(2) & (5), 29 U.S.C. §§ 1105(a)(1)-(3), 1132(a)(2) & (5).

CLASS ACTION COMPLAINT FOR
VIOLATIONS OF ERISA

151.    All of the Defendants knew or should have reasonably known that the December 31, 2018, year-end valuation was improperly inflated and that the distributions made thereunder also were inflated. The Board Defendants knew that the other Board Defendants were not taking reasonable steps to monitor the Trustee Defendants and that they were not ensuring that Trustee Defendants acted solely in the interests of the CPES ESOP's participants with respect to the 2018 year-end valuation and the associated distributions.

152.    Accordingly, all Defendants also are liable as co-fiduciaries for the losses caused by any fiduciary.

## COUNT V
### Knowing Participation in Fiduciary Breaches
### Under ERISA Section 502(a)(3), 29 U.S.C. § 1132(a)(3)
### (Against All Defendants)

153.    Plaintiffs hereby reallege and incorporate the allegations contained in paragraphs 1 through 152 as if the same has been set forth herein.

154.    ERISA Section 405(a)(1), 29 U.S.C. § 1105(a)(1), makes a fiduciary of a Plan liable for another fiduciary of the same plan's breach when "he participates knowingly in, or knowingly undertakes to conceal, an act or omission of such other fiduciary, knowing such act or omission of such other fiduciary is a breach …".

155.    ERISA Section 405(a)(2), 29 U.S.C. § 1105(a)(2), makes a fiduciary of a Plan liable for another fiduciary of the same plan's breach when "by his failure to comply with section 404(a)(1) in the administration of his specific responsibilities which give rise to his status as a fiduciary, he has enabled such other fiduciary to commit a breach …".

156.    ERISA Section 405(a)(3), 29 U.S.C. § 1105(a)(3), makes a fiduciary of a Plan liable for another fiduciary of the same plan's breach "if he has knowledge of a breach by such other fiduciary, unless he makes reasonable efforts under the circumstances to remedy such breach".

157.    Defendants knowingly participated in the fiduciary breaches of each other Defendant as alleged herein because they had both actual and constructive knowledge of the facts that led to such other's fiduciary breaches in this matter.

CLASS ACTION COMPLAINT FOR
VIOLATIONS OF ERISA

158.    As a result of the foregoing violations of ERISA, Defendants each caused a loss to the CPES ESOP for which each is personally liable.

## COUNT VI
**Breach of Fiduciary Duty Under ERISA Sections 404(a)(1)(A), (B), and (D),**
**29 U.S.C. § 1104(a)(1)(A), (B), and (D) for**
**Failure to Monitor the Trustee Defendants**
**(Against the Board Defendants)**

159.    Plaintiffs hereby reallege and incorporate the allegations contained in paragraphs 1 through 158 as if the same has been set forth herein.

160.    ERISA § 404(a)(1), 29 U.S.C. § 1104(a)(1), requires that a plan fiduciary discharge his or her duties with respect to a plan solely in the interest of the participants and beneficiaries, (A) for the exclusive purpose of providing benefits to participants and the beneficiaries of the plan, (B) with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent person acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims, and (D) in accordance with the documents and instruments governing the plan insofar as such documents and instruments are consistent with ERISA.

161.    Under ERISA, a fiduciary charged with the authority to appoint and remove other fiduciaries or who, as a practical matter, in fact appoints other fiduciaries has an ongoing duty to monitor the performance of those persons whom the fiduciary is empowered to remove.

162.    A monitoring fiduciary must, at reasonable intervals, ensure that the fiduciary that it has appointed is acting in compliance with the terms of the applicable plan, acting in accordance with ERISA and applicable law, and satisfying the needs of the plan.

163.    A monitoring fiduciary must ensure that the monitored fiduciaries are performing their fiduciary obligations, including those with respect to the management of the plan assets.

164.    A monitoring fiduciary must take prompt and effective action to protect the plan and participants when the monitored fiduciaries fail to perform their obligations.

165.    The Board Defendants appointed the Trustee Defendants.

CLASS ACTION COMPLAINT FOR
VIOLATIONS OF ERISA

166.    The Board Defendants were fiduciaries of the CPES ESOP under ERISA Section 3(21(A), 29 U.S.C. § 1002(21)(A), because pursuant to Section 2 (Definition of Trustee), the CPES ESOP Plan Document, the Board Defendants were responsible for appointing the Trustee Defendants.

167.    Had the Board Defendants appropriately monitored the Trustee Defendants, they would have determined that the Trustee Defendants had breached their fiduciary duties because (i) the Trustee Defendants' process of establishing the fair market value of CPES-AZ in the 2018 year-end valuation was flawed; (ii) the Trustee Defendants followed an improper direction that the Trustee Defendants should not have followed; and/or (iii) the Trustee Defendants failed to take any corrective action.

168.    By failing to properly monitor the Trustee Defendants, permitting the Trustee Defendants to proceed with the 2018 year-end valuation and associated distributions, and failing to take sufficient steps or corrective action to protect CPES ESOP participants, the Board Defendants breached their fiduciary duties under ERISA §§ 404(a)(1)(A) and (B), 29 U.S.C. §§ 1104(a)(1)(A) and (B).

**COUNT VII**
**ERISA Section 410(a), 29 U.S.C. § 1110(a) –**
**Improper Indemnification**
**(Against All Defendants)**

169.    Plaintiffs hereby reallege and incorporate the allegations contained in paragraphs 1 through 168 as if the same has been set forth herein.

170.    There are a number of documents that purport to indemnify Defendants that violate ERISA's prohibition on fiduciary indemnification.:

171.    Such indemnification provisions, "which relieve fiduciaries from responsibility or liability for any responsibility, obligation, or duty … shall be void as against public policy" under ERISA Section 410, 29 U.S.C. § 1110.

172.    As such, none of the Defendants herein are entitled to indemnification for their defense of this case, for the ESOP's losses, or for the damages and/or attorneys' fees and costs to be awarded against them.

CLASS ACTION COMPLAINT FOR
VIOLATIONS OF ERISA

1
2
3

**COUNT VIII**
**ERISA Section 502(c), 29 U.S.C. 1132(c)(1) –**
**Failure to Provide Participant Account Statements**
**(Against the Board Defendants)**

4    173.    Plaintiffs hereby reallege and incorporate the allegations contained in paragraphs
5    1 through 172 as if the same has been set forth herein.

6    174.    ERISA § 105(a)(1)(A)(ii), 29 U.S.C. § 1025(a)(1)(A)(ii), requires the CPES
7    ESOP Plan Administrator to "furnish a pension benefit statement– … at least once a calendar
8    year to a participant or beneficiary who has his or her own account under the plan but does not
9    have the right to direct the investment of assets in that account".

10    175.    The Ninth Circuit has also recognized that a fiduciary's duty under ERISA §
11    404(a)(1)(A), 29 U.S.C. § 1104(a)(1)(A), to disclose is not limited to those specified in the
12    statute, but extends to additional disclosures to the extent that they relate to the provision of
13    benefits or the defrayment of expenses. *See, e.g., Guenther v. Lockheed Martin Corp.*, 972
14    F.3d 1043, 1051 (9th Cir. 2020); *Washington v. Bert Bell/Pete Rozelle NFL Ret. Plan*, 504
15    F.3d 818, 823-25 (9th Cir. 2007) (ERISA imposes "an obligation to convey complete and
16    accurate information material to the beneficiary's circumstance, even when a beneficiary has
17    not specifically asked for the information."); *Hughes Salaried Retirees Action Committee v.*
18    *Administrator of the Hughes Non-Bargaining Retirement Plan*, 72 F.3d 686, 690 (9th Cir.
19    1995) (*en banc*).

20    176.    The Board Defendants, acting as CPES ESOP Plan Administrator, had the
21    obligation on behalf of CPES to timely provide Plaintiffs and each of the ESOP participants
22    with their participant account statements for plan years 2019, 2020, and 2021.

23    177.    ERISA Section 502(c)(1)(A), 29 U.S.C. § 1132(c)(1)(A), provides for penalties
24    for a plan administrator's refusal to provide required information. Under that section of
25    ERISA:

26    "(1) Any administrator (A) who fails to meet the requirements of … section
27    1025(a) of this title with respect to a participant or beneficiary, … may in the
    court's discretion be personally liable to such participant or beneficiary in
28    the amount of up to $100 a day from the date of such failure or refusal, and

the court may in its discretion order such other relief as it deems proper. For purposes of this paragraph, each violation described in subparagraph (A) with respect to any single participant, … shall be treated as a separate violation."

178.    While ERISA Section 502(c), 29 U.S.C. § 1132(c), provides a penalty of up to $100 per day, that amount was increased to $110 per day by federal regulation. 29 C.F.R. § 2575.502c-1.

179.    Plaintiffs and the CPES ESOP participants did not receive their participant account statements for ESOP plan years 2019, 2020, and 2021 in a timely manner. As of December 15, 2022, the last participant account statement they received was for ESOP plan year 2018, namely their respective account balances as of December 31, 2018, which they received sometime in 2019. In or about late December 2022, the ESOP participants began belatedly receiving their respective participant account statements for ESOP plan years 2019, 2020, and 2021.

180.    The CPES ESOP Plan Administrator, namely, the Board Defendants acting on behalf of CPES-AZ, failed and refused to provide such participant account statements earlier.

181.    There are believed to be in excess of 1,300 current and former CPES-AZ employees who are participants or their beneficiaries in the CPES ESOP who did not timely receive participant account statements.

182.    Plaintiffs and each CPES ESOP participant are, therefore, each entitled to damages in the amount of $110 per day for the Board Defendants' failure to timely provide their CPES ESOP participant account statements for 2019, 2020, and 2021, to be calculated from approximately October 15, 2020, October 15, 2021, and October 15, 2022, respectively, to the present.

## NOTICE TO THE SECRETARY OF LABOR
## AND THE SECRETARY OF THE TREASURY

CLASS ACTION COMPLAINT FOR
VIOLATIONS OF ERISA

183.    In accordance with ERISA Section 502(h), 29 U.S.C. § 1132(h), Plaintiffs will serve by certified mail a copy of this Class Action Complaint for Violations of ERISA upon the Secretary of Labor and Secretary of the Treasury.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray for judgment against all Defendants and for the following relief:

A.    Judgment against Defendants David Johnson, Mark G. Monson, Douglas Zimmerman, and Alberto Tarajano, and any DOE Defendants, jointly and severally, for breach of their fiduciary duties under ERISA to the Plan and the class members;

B.    Judgment against Defendants David Johnson, Mark G. Monson, Douglas Zimmerman, and Alberto Tarajano, and any DOE Defendants, jointly and severally, in an amount to personally make good to the Plan and/or to any successor trust(s) the losses resulting from their breaches of ERISA;

C.    Judgment against Defendants David Johnson, Mark G. Monson, Douglas Zimmerman, and Alberto Tarajano, and any DOE Defendants, jointly and severally, to provide other appropriate equitable relief to the Plan and its participants and beneficiaries;

D.    Judgment against Defendant Monson and the Board Defendants and any DOE Defendants (in their capacity as the Plan Administrator of the CPES ESOP), jointly and severally, in the amount of $110 per day for each of the Plaintiffs and class members, for a period time to be determined at trial, for failing to timely provide the CPES ESOP participants and beneficiaries with their CPES ESOP account statements for 2019, 2020, and 2021;

E.    Judgment declaring the proceeds of any recovery for the Plan is to be allocated to the accounts of the Plaintiffs and Class members to make them whole for any injury that they suffered as a result of the breaches of ERISA in accordance with the Court's declaration;

F.    Enjoin, strike, void, and declare invalid the portions of the CPES ESOP Plan Documents, CPES ESOP Trust Agreement, and any other agreement which purport to indemnify Defendants at the expense of the CPES ESOP or the debtors (other than valid insurance policies which do not result in additional expenses to the CPES ESOP), and restore

CLASS ACTION COMPLAINT FOR VIOLATIONS OF ERISA

all losses to the CPES ESOP which have resulted from such provisions, including, without limitation, immediate preliminary and permanent injunctive relief prohibiting the indemnification of Defendants and the advancement of any attorneys' fees and costs;

G.      Order Defendant Tarajano to disgorge any fees and costs for attorneys' fees he received and/or for which he or his attorneys were reimbursed in conjunction with the matters herein;

H.      Order that Defendants and each of them provide other appropriate equitable relief to the Plan;

I.      Award Plaintiffs' reasonable attorneys' fees and costs of suit incurred under ERISA Section 502(g), 29 U.S.C. § 1132(g), and/or for the benefit obtained for the common fund;

J.      Order Defendants to pay prejudgment and post-judgment interest;

K.      Certify this action as a class action under Fed. R. Civ. P. 23;

L.      Appoint Plaintiffs Robert Bennetti, Linda Mariano, and Linki Peddy, as class representatives;

M.      Appoint Plaintiffs' counsel as Class Counsel; and

N.      Award such other and further relief as the Court deems equitable and just.

Dated: April 21, 2023                    Respectfully submitted,

                                         */s/ Gregory Stoltz*
                                         Gregory Stoltz (027519)
                                         G Stoltz Law, LLC
                                         530 Main Street, Suite B
                                         Tucson, Arizona 85701
                                         (520) 428-4734
                                         greg@gstoltzlaw.com

                                         *Attorneys for Plaintiffs Robert Bennetti, Linda Mariano, and Linki Peddy*

CLASS ACTION COMPLAINT FOR
VIOLATIONS OF ERISA